

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

UNITED STATES OF AMERICA

                    - against -

                                                    **MEMORANDUM AND ORDER**

ISHWAN MASON, a/k/a "Trooper",
REGGIE CHIN, a/k/a "Irky", ADREAN               S1 06 Cr. 80 (NRB)
FRANCIS, MATTHEW CASAZZA, a/k/a
"Estrada", LARRY BARRIS, a/k/a
"Tony Panic", ANTHONY PATTERSON,
a/k/a "Rooster", DAMION ELLIOT,
AARON BLAKE, a/k/a "Mylo Man",
BRIDGETT NEWLAND, a/k/a/ "Mummi",
and RONNIE MAZIER, a/k/a "Robert
Anthony Barnes",

                              Defendants.

-----------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


        The  superceding  Indictment  in  this  matter  charges  ten

defendants  with  conspiracy  to  distribute  and  possess  with  intent

to  distribute  marijuana,  and  with  possession  of  firearms  in

furtherance  of  drug  trafficking  crimes.    Defendants  Adrean

Francis  ("Francis"),  Matthew  Casazza  ("Casazza"),  Larry  Barris

("Barris"),  and  Aaron  Blake  ("Blake")  (collectively,  "movants")

have  filed  pre-trial  motions.[1]   Given  the  identity  of  many  of  the

_____

        [1] Specifically, defendant Francis moves to order the Government
to  provide  a  bill  of  particulars.    Defendant  Casazza  moves:    (1)  to
suppress  his  post-arrest  statements;  (2)  for  a  bill  of  particulars;
and  (3)  to  sever  his  trial  from  that  of  his  co-defendants.    Defendant
Barris  moves:  (1)  to  suppress  his  January  12,  2004  statements;  (2)  for
a  bill  of  particulars;  (3)  to  strike  all  aliases  from  the  caption  of
the  Indictment;  (4)  to  order  the  Government  to  produce  additional

Returned to chambers for scanning on ___2-2307___
Scanned by chambers on __2/8/07__

issues raised in the motions before us, we shall address the
questions presented to us in the following order:     (1)
defendants Barris, Blake, and Casazza's motions to suppress; (2)
defendants Francis, Casazza, Barris, and Blake's motions for a
bill of particulars; (3) defendants Barris and Blake's motions
to strike aliases from the superceding Indictment; (4) defendant
Barris's motions for discovery; and (5) defendant Casazza's
motion for severance of his trial. For the reasons set forth
below, we grant defendant Barris's motion to the extent that he
requests an evidentiary hearing to determine whether his post-
arrest statements should be suppressed, and similarly, defendant
Blake's motion to the extent that he requests a hearing to
determine   whether   his   post-arrest   statements   should   be
suppressed, and whether he consented to the search of his home.
In all other respects the defendants' motions are denied.

---

discovery and to disclose any evidence the Government intends to offer
pursuant to Federal Rules of Evidence 404(b), 608, or 609 within two
weeks of trial; and (5) to order the Government to produce materials
related to their obligations under Brady. We believe the date in the
motion of January 12, 2004 was in error, and that defendant Barris
instead meant to move to suppress post-arrest statements made on May
28, 2006.   Defendant Blake moves: (1) to suppress his post-arrest
statements and any property or documents recovered from his home; (2)
for the provision of a bill of particulars; and (3) to strike his
alias from the caption of the Indictment.   Further, each of these
defendants have joined in the motions of their co-defendants to the
extent they are applicable.

2

## INDICTMENT

Count One of the superceding Indictment charges all ten defendants[2] with a conspiracy to distribute 1,000 kilograms and more of marijuana, from in or about 1997 up to and including in or about 2004, in violation of 21 U.S.C. § 846. See Superceding Indictment ("Ind.") ¶¶ 1-2. The Indictment details several overt acts which were allegedly undertaken by defendants in furtherance of the conspiracy. For example, the Indictment alleges that from in or about 2000 to in or about 2002, nine defendants, including the movants, received marijuana from an apartment located at 2748 Cruger Avenue in the Bronx. Id. ¶ 3(a). Further, the Indictment alleges that seven defendants, including the movants, continued to receive marijuana from in or about 2002 to in or about 2004, at a different apartment, located at 2911 Tenbroeck Avenue in the Bronx. Id. ¶ 3(b).

Count Two charges nine of the ten defendants, including the movants, with willful and knowing possession of firearms in furtherance of the drug trafficking crime charged in Count One of the Indictment, in violation of 18 U.S.C. § 924(c). Id. ¶ 4.

## DISCUSSION

## I.  Defendants Barris, Casazza, and Blake's Motions to Suppress

---

[2] Nine defendants were originally charged in a sealed Indictment that was returned on January 26, 2006. The superceding Indictment, which added an additional defendant to the conduct previously charged, was returned on July 13, 2006.

3

## A. Applicable Law

It is well settled law that statements must be suppressed if a defendant in custody is interrogated without first being advised: (a) of his right to remain silent; (b) that his statements may be used against him; and (c) that he has a right to counsel. See Miranda v. Arizona, 384 U.S. 436, 467-71 (1966); United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998). When the Government seeks to rely on a defendant's waiver of his Miranda rights, to support the admissibility of post-arrest statements, the Government must show by a preponderance of evidence: (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right. United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995); United States v. Gaines, 295 F.3d 293, 297 (2d Cir. 2002). Further, although there is no per se rule which bars oral or implicit waivers, a court should evaluate the totality of the circumstances to ascertain whether defendant relinquished his rights voluntarily and with a full awareness of the right being waived and the attendant consequences of doing so. See id. at 297-98. "Failure to administer Miranda warnings creates a presumption of compulsion, and that presumption is irrebuttable for purposes of the prosecution's case in chief." Mathurin, 148 F.3d at 69 (quoting

4

Oregon v. Elstad, 470 U.S. 298, 307 (1985) (internal quotation marks omitted).

"[A]n evidentiary hearing on a motion to suppress ordinarily is required if the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact . . . are in question." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). Further, in order to create a factual dispute in this context, a defendant must submit sworn factual allegations from a person with personal knowledge of the underlying, relevant facts. See United States v. Shamsideen, 03 Cr. 1313 (SCR), 2004 WL 1179305, at *9 (Mar. 31, 2004) (citing Uinted States v. Viscioso, 711 F.Supp. 740, 745 (S.D.N.Y. 1990)). An affidavit of defense counsel who does not have personal knowledge of the facts and circumstances surrounding the events at issue is an insufficient basis for an evidentiary hearing. See id.; see also United States v. Barrios, 2004 WL 4119140, at *1 (2d Cir. 2000) (citing United States v. Gillette, 383 F.2d 843, 848 (2d Cir. 1967). A defendant's assertion in his affidavit that he was not administered his Miranda rights, when the Government asserts the contrary, raises a factual dispute requiring an evidentiary hearing. See Mathurin, 148 F.3d at 69. Further, if the Government fails to prove that the warnings were given, the

5

suppression of post-arrest statements for use in the Government's case in chief is required. Id.

## B.   As Applied to Defendant Barris, Casazza, and Blake's Motions

### 1.  Larry Barris

On May 28, 2006, Barris was arrested on an arrest warrant, issued pursuant to the original Indictment. See Government's Memorandum of Law in Opposition to Defendants' Pre-Trial Motions ("Gov't Mem. Opp.") at 4.   The Government states that Agent Baldus read Barris his Miranda rights, as witnessed by United States Deputy Marshal Doug MacLeod.   Barris thereafter made statements to Agent Baldus and United States Marshal Ralph Garofalo. See id.   The defendant, in his sworn affidavit, "does not recall being . . . . advised" of his Miranda rights, see Affidavit of Larry Barris, in Support of Motions, dated October 9, 2006 ("Barris Aff.") ¶ 5, and asserts that he did not knowingly, voluntarily, and intelligently waive his Fifth Amendment privilege against self-incrimination prior to making alleged statements to the agents.  Id. ¶¶ 8-9.  Defendant states that he was arrested while performing on stage with his band, in front of a live audience at the Brick By Brick Club in San Diego, California, and was transported by unmarked vehicle to the United States Marshal's Offices.   Id. ¶¶ 5, 9-11.   Given these circumstances, defendant argues that his admissions were

6

not voluntary. Id. ¶¶ 9-14. In light of the specific allegations made by defendant Barris in his affidavit, and given that the Government agrees that a hearing is necessary to resolve the questions of whether Barris was read his Miranda rights prior to questioning and whether Barris's statements were voluntary, see Gov. Mem. Opp. at 10, a hearing will be conducted with regard to defendant Barris's suppression motion.

## 2. Aaron Blake

On April 7, 2006, defendant Blake was arrested at his home. See Gov't Mem. Opp at 4; Affirmation of Janeanne Murray, dated October 6, 2006 ("Murray Aff.") ¶ 2. The Government states that thereafter, Agent Baldus read Blake his Miranda rights. Agent Baldus then recovered a cellular phone and various papers and documents from Blake's person incident to his arrest. Further, according to the Government, Blake gave Agent Baldus consent to search his room at 519 E. 46th Street, Brooklyn, NY; Baldus recovered another one cellular phone during the search. See id. Blake, who refers to himself as Garfield Alex Thomas, in his sworn declaration states that he has "no recollection of being advised of [his] Miranda rights" nor "any recollection of waiving their protections." Declaration of Garfield Alex Thomas, dated Feb. 6, 2007 ("Blake Decl.") ¶ 3. Defendant further states that at the time he was questioned "he was groggy and disoriented, having been recently woken up" and was

7

subjected to pressure from the agents to cooperate, including threats of the prospect of decades in jail. As a result, defendant states he was "scared and confused." Id. ¶ 4. Since a sworn statement from a defendant in this context is sufficient to raise a factual dispute warranting a suppression hearing, we believe one is appropriate here. Further, defendant states that he never gave the agents consent to search his home, and is unaware of anyone else giving them such consent. Id. ¶ 5. As was the case in United States v. Isofia, 380 F.2d 226 (2d Cir. 2004), Blake has made sufficient allegations to dispute the voluntariness of Blake's consent to search his home. Accordingly, we order that an evidentiary hearing be held to determine whether Blake was properly Mirandized, whether he voluntarily waived his rights, and whether he voluntarily consented to the search of his home.

### 3. Matthew Casazza

On February 20, 2006, Casazza was arrested on an arrest warrant issued pursuant to the original Indictment. See Gov't Mem. Opp. at 4; Memorandum of Law in Support of Defendant Matthew Casazza's Motion to Suppress His Post-Arrest Statements, for Severance, and for a Bill of Particulars ("Casazza Mem.") at 4. The Government states that Special Agent Eric Baldus of the Drug Enforcement Administration ("DEA") read Casazza his rights, as witnessed by DEA Special Agent Karen Mogavero. Gov't Mem.

8

Opp. at 4. According to the Government, after being read his rights, Casazza made statements to the agents. Id.

Two of defendant's submissions assert that Casazza was not apprised of his Miranda rights and consequently that his statements made in custody were involuntary. The affirmation of Casazza's attorney states that defendant Casazza told his counsel that he was not advised of his Miranda rights before he was questioned. See Affirmation of Avrom Robin, dated October 9, 2006, ¶ 8. In addition, defendant's memorandum implies that statements made by Casazza after his arrest were involuntary, because Casazza "did not understand his right to refuse to answer questions." Casazza Mem. at 8. However, as mentioned above, statements from defense counsel, whether in counsel's affirmation or memorandum of law, are insufficient to warrant an evidentiary hearing on this matter, as counsel lacks the requisite personal knowledge about the arrest to raise a material dispute of fact. See Viscioso, 711 F.Supp. at 745. Further, Casazza's own affidavit does not state that he was not advised of his Miranda rights prior to being questioned, nor does it state that he did not understand his right to remain silent while in custody. See Affidavit of Matthew Casazza in Support of a Motion to Suppress, dated October 5, 2006 ("Casazza Aff.").

9

Casazza does state in his affidavit that he has reviewed the DEA form 6, or Report of Investigation, and that although it contains some statements he concedes he made to the agents, it also contains statements that he did not make.   Casazza Aff. ¶ 6.   Specifically, in his reply affirmation, Casazza's counsel asserts that he did not make statements that he "frequently observed many large brown cardboard boxes containing marijuana," nor did he observe other illegal activities, at 2748 Cruger Avenue in the Bronx.   See Reply Affirmation in Support of Defendant Matthew Casazza's Motion ("Casazza Repl.") at 2. However, these contentions do not require a suppression hearing. To whatever extent he disputes the statements contained in the DEA report, Casazza will have the opportunity to adequately raise these challenges at trial if the Government seeks to introduce his statements.   Accordingly, defendant Cazassa's motion to suppress denied.

## II. Defendants Francis, Casazza, Barris and Blake's Motions for a Bill of Particulars

Defendants Francis, Casazza, Barris, and Blake all move for an order compelling the Government to provide a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.   Specifically, Francis requests that the Government identify the dates, places, and quantities of marijuana that he received, the identity of those persons from

whom he received it, and the specific acts he engaged in receiving it.    Francis also requests that the Government identify the dates and places that he possessed firearms, and the types of firearms he possessed.    See Francis' Memorandum of Law In Support of Motion ("Francis Mem.") at 2-3.

Casazza requests a bill of particulars given the "bare bones" nature of the Indictment, but does not list the specific information he seeks.    See Casazza Mem. at 10-11.

Barris requests the identification of the individuals with whom he received marijuana, the dates he received it, and the quantities he received at the two apartments identified in the indictment.    He also asks that the Government be required to identify the specific conduct he engaged in which constitutes the alleged overt acts.    Barris further requests that the Government provide: (1) information, including the type, make, and model, of each firearm; (2) the dates, location, and type of possession -- constructive or actual -- of the weapons; and (3) whether defendant is a principal or accomplice and the factual basis thereof.    See Affidavit [of Alan Nelson] in Support of Motions & Accompanying Memorandum of Law ("Nelson Aff.") ¶ 26.

Blake requests that the Government identify the co-conspirators and the overt acts not specifically alleged in Count One of the superceding Indictment, the date that he joined the conspiracy, and all instances in which he received marijuana

11

from the two apartments identified in the Indictment.   Murray
Aff. ¶ 10.   Further, Blake requests that the Government identify
the relationship between defendant Bridgett Newland's actions
and Blake's actions, as well as the details of Newland's
transportation of proceeds from the alleged drug sales.   Id.
In addition, Blake requests similar information for Count Two,
including the specific dates, times, and locations where he
possessed a firearm, how it was in furtherance of drug
trafficking, and whether his possession was constructive or
actual.   Id.

The purpose of a bill of particulars is to provide
sufficient information about an offense to permit the defendant
to prepare for trial, to avoid unfair surprise, and to preclude
a second prosecution for the same offense.   See United States v.
Butler, 351 F.Supp.2d 121, 134 (S.D.N.Y. 2004) (citing Fed. R.
Crim. P. 7(f); United States v. Torres, 901 F.2d 205, 234 (2d
Cir. 1990); United States v. Macchia, 35 F.3d 662, 671 n.1 (2d
Cir. 1994)).   However, "a bill of particulars is not a general
tool of discovery, nor is it a device to give the defense a road
map to the government's case."   Id.   Thus, it is only required
"where the charges of the indictment are so general that they do
not advise the defendant of the specific acts for which he is
accused."   Torres, 901 F.2d at 234.   Further, "[a]cquisition of
evidentiary detail is not the function of the bill of

12

particulars." Id. An Indictment need not identify all alleged co-conspirators, nor specify the nature, time, and place of every overt act the defendant or others allegedly took in furtherance of a conspiracy, nor set forth all the evidence the Government seeks to introduce. See Butler, 351 F.Supp.2d. at 134.

The superceding Indictment reveals that this case is a generic narcotics conspiracy, wherein firearms were used to further narcotics trafficking. It details specific overt acts defendants allegedly undertook in furtherance of the conspiracy. In addition, the Government has represented to this Court that the extensive discovery produced to date includes items seized from various locations, including marijuana, firearms, ammunition, and large amounts of cash. See Gov't Mem. Opp. at 16. It is appropriate in ruling on a motion for a bill of particulars to consider whether the information sought has been provided in another way. See United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). Moreover, defendants seek "the very sorts of information with respect to which courts routinely deny requests for particularization." Id. Defendants' motions are denied, as no further specificity is required here.

13

## III.   Defendants Barris and Blake's Motions to Strike Aliases from the Indictment

Barris moves to strike the aliases of all defendants in the caption of the Indictment.[3]   See Nelson Aff. ¶¶ 20-23.   Blake moves to strike the alias the alias "Mylo Man" from the Indictment.   Murray Aff. at ¶ 11.

Motions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial. United States v. Rittweger, 259 F.Supp.2d 275, 293 (S.D.N.Y. 2003).   Accordingly, aliases may be included in an indictment where evidence of those aliases will be presented to the jury at trial.   See id. (declining to strike aliases as surplusage where the Government represented that there would be evidence at trial that defendant had used the aliases in question, but permitting renewal of motion at conclusion of evidence).   The Government represents to this Court that it will introduce at trial witness testimony that the individuals charged here were known by co-conspirators and others by the aliases found in the Indictment. Gov't Mem. Opp. at 18.   Thus, we decline to strike the aliases at this time.

## IV.   Defendant Barris's Discovery Requests

---

[3] We question whether Barris has standing to move on behalf of any defendant other than himself.   However, in light of our resolution of this motion, we need not resolve this issue.

14

Barris requests an order that the Government comply with its obligations pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972). Nelson Aff. ¶ 25. Further, Barris requests that the Government be ordered to disclose evidence of uncharged crimes which it seeks to produce at trial under Federal Rules of Evidence 404(b), 608, or 609 within two weeks of any scheduled trial date. See [Barris] Notice of Motion ¶ III. The Government represents to this Court that it has produced discovery to Barris and the other defendants pursuant to Rule 16 of the Federal Rules of Criminal Procedure, and has made a good-faith representation to the defense that it recognizes and has complied with its obligations under Brady and Giglio. Courts in this Circuit have repeatedly denied requests for discovery orders under these circumstances. See, e.g., United States v. Gallo, No. 98 Cr. 338, 1999 WL 9848, at *8 (S.D.N.Y. Jan. 11, 1999) (relying on Government's representations of awareness of Brady and Giglio obligations and intention to produce such materials, despite Government being unaware of any Brady material at that moment, sufficient to deny defendant's motion to compel discovery); United States v. Perez, 940 F.Supp. 540, 553 (S.D.N.Y. 1996) ("Courts in this Circuit have repeatedly denied pretrial requests for discovery orders pursuant to Brady where the Government, as here, has made a good-faith

15

representation to the court and defense counsel that it recognizes and has complied with its disclosure obligations under Brady."). Further, the Second Circuit has held that Brady material, including Giglio material which is useful to impeach the credibility of a Government witness, need only be disclosed by "the point at which a reasonable probability will exist that the outcome would have been different if an earlier disclosure had been made," in other words, "in time for its effective use at trial." United States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001). As no trial date has been as of yet, we rely on the Government's representations that it will continue to comply with its duties under Rule 16, Brady, and Giglio. As for 404(b) disclosures and other pretrial matters, we will set a schedule when the case is set for trial.

## V.  Defendant Casazza's Motion for Severance

Finally, Casazza requests that his case be severed from that of his co-defendants. Under Rule 8(b) of the Federal Rules of Criminal Procedure, joinder of defendants in a single indictment is allowed "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions constituting an offense or offenses." See Fed. R. Crim. P. 8(b). The Second Circuit has construed this language to mean that joinder is proper where two or more persons' criminal acts are "unified by some substantial identity of facts

16

or participants, or arise out of a common plan or scheme." United States v. Cervone, 907 F.2d 332, 341 (2d Cir. 1990) (citations omitted). The Indictment clearly satisfies the requirements of Rule 8(b).

A district court should only grant severance pursuant to Rule 14 of the Federal Rules of Criminal Procedure if there is a "serious risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). According to Casazza, he was incarcerated for a significant portion of the time from in and about 1997 to in and about 2004, a period which overlaps with the alleged conspiracy. Casazza argues that in light of this fact, there is a danger of prejudicial spillover, in that evidence admissible only against other defendants may influence a jury to attribute criminal intent to his ambiguous conduct. See Casazza Mem. at 9-10. Further, Casazza asserts that the volume and magnitude of evidence as against other defendants may so dwarf that presented against him as to require severance to prevent spillover prejudice, see id. at 10, which has also been referred to as "disparity of proof" prejudice. See United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993).

However, "differing levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are

17

insufficient grounds for separate trials."   United States v. Scarpa, 913 F.2d 993, 1015 (2d Cir. 1990).   With regard to Casazza's argument concerning the potential for prejudice resulting from the disparity of proof, the Second Circuit "has repeatedly recognized that joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible."   Locascio, 6 F.3d at 947. Casazza's concern that testimony against a codefendant may be harmful is not sufficient grounds for severance, since it is likely that testimony at a severed trial would not be limited to evidence involving only Casazza.   See United States v. Rosa, 11 F.3d 315, 341-42 (2d Cir. 1993).   In the interests of judicial economy, and because Casazza has not at this time established a serious risk that he would be unfairly prejudiced if tried along with his alleged co-conspirators, his motion for severance is denied.

## CONCLUSION

For the foregoing reasons, we order that evidentiary hearings be held in conjunction with defendant Barris's motion to suppress statements and defendant Blake's motion to suppress statements and evidence seized from his home. The motions, in all other respects, are hereby denied. A subsequent criminal conference for all defendants is hereby scheduled for February 22, 2007 at 11:30 A.M.

Dated:     New York, New York
           February 16, 2007

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

19